259 So.2d 784 (1972)
ARISON SHIPPING COMPANY et al., Appellants,
v.
KLOSTERS REDERI A/S, d/b/a Norwegian Caribbean Lines, Appellee.
No. 72-135.
District Court of Appeal of Florida, Third District.
March 28, 1972.
Rehearing Denied April 18, 1972.
*785 Heiman & Crary and William A. Meadows, Jr., Miami, for appellants.
Patton, Kanner, Nadeau, Segal & Stobs, Miami, for appellee.
Before BARKDULL, C.J., and CHARLES CARROLL and HENDRY, JJ.
PER CURIAM.
Appellant-Arison Shipping Company ("Arison") prosecuted an expedited interlocutory appeal to review an order of the circuit court appointing, after an ex parte hearing without notice, a receiver for certain funds and records. The order was entered on February 2, 1972, pursuant to a motion and a prayer for such relief in the complaint filed by appellee-Klosters Rederi A/S ("Klosters").
Klosters filed a sworn complaint invoking equity jurisdiction and alleged that the appellant Arison was to keep the books and passenger arrangements under a joint venture agreement between the parties. The complaint further alleged that Arison converted funds belonging to Klosters and the supporting records of their joint venture, to the immediate detriment of Klosters. The joint venture agreement, attached as an exhibit to the complaint, provided that while appellee Klosters, the owner of the ships, was to operate them, the appellant Arison was to be in charge of advertising, passenger arrangements, and maintenance of the records of the joint venture. The sworn complaint was the original sworn complaint which had been filed by the appellee Klosters as the plaintiff in a civil action brought in the United States District Court for the Southern District of Florida, Case No. 72-170-Civ-JLK.
The order appealed reads, in pertinent part:
"THIS CAUSE came on to be heard upon the sworn Complaint of the Plaintiff for the appointment of a Receiver without notice and upon the Affidavits of BERNARD R. CHABOT, former President of GEORGIAN BAY LINES, INC., a subsidiary of the Defendant ARISON SHIPPING COMPANY, and the Affidavit of MILTON HATFIELD, a certified public accountant and a member of the firm of Lybrand, Ross Bros. & Montgomery. From the foregoing and evidence taken before the Court, the Court finds that the facts and circumstances warrant extraordinary relief by way of a Receiver, and that irreparable damages will result to the Plaintiff if the extraordinary relief is not granted. The Court is further of the opinion that the appointment of a Receiver without notice is necessary in order to preserve the status quo of the various funds, books and records, and that there is a strong probability that if notice were given to the Defendants of the application for the relief herein granted that irreparable damage would be done to the Plaintiff by the removal of matured and maturing accounts, and the destruction of books and records belonging to the Plaintiff, which books and records are necessary and essential to the performance of outstanding contracts with third parties whose monies while belonging to the Plaintiff are currently on deposit with the banks hereinafter named and under the direction and control of ARISON SHIPPING COMPANY. * * *"
*786 According to the briefs and the complaint, Klosters purported to withdraw, under paragraph 12.2 of the written joint venture agreement, its ships and terminate the agreement upon thirty days' written notice by a letter of December 31, 1971, because of adverse economic conditions. Arison points to paragraph 16, a broad arbitration provision, and its written demand for arbitration dated January 3, 1972.[1]
*787 Sometime thereafter Klosters originally brought suit by a sworn complaint filed in the federal district court in Miami, Florida. Shortly thereafter motions concerning federal jurisdiction were made, and a hearing was held in which testimony was adduced. It appears that the federal district judge dismissed the suit for want of diversity of citizenship.
On the same day that the complaint was dismissed in the federal court, Klosters initiated suit in the Dade County circuit court. Arison has argued, although it does not appear of record, that several hours earlier that same day it had filed suit in the Dade County circuit court seeking arbitration under the arbitration provisions of the contract.
We have paraphrased the contentions of appellant Arison as follows: (1) Arison has complied with the arbitration clause of the contract and under those provisions court proceedings are stayed; (2) the order appointing a receiver does not preserve the status quo, which is defined in the contract, but modifies it; (3) Klosters is a Norwegian corporation, with its principal place of business in Florida, and therefore, under § 613.04, Fla. Stat., F.S.A., cannot maintain this action; (4) under the circumstances here, the appointment of the receiver without notice, without requiring a bond and surety, and without specifying the conditions of the bond was reversible error.
The appellee-Klosters has argued to the contrary by contentions which we have summarized: (1) arbitration is not properly before us; (2) appointment of a receiver was proper because within a month Arison misappropriated roughly one million dollars; (3) Klosters is qualified to do business; (4) receivership was not of the Arison Shipping Company but of Klosters' books in Arison's hands, so that the ex parte appointment without notice was proper, especially where the remaining defects in the appointment were not challenged below, precluding review of those matters here.
We express the view that the sole issue presented by this appeal was whether the trial court erred in appointing a receiver for certain funds and records after an ex parte hearing without notice. We have for review only the order of the circuit court, and the record consists only of that order, the receiver's bond, the complaint with attachments, the motion for appointment of the receiver, and appeal papers.
In cases involving the appointment of a receiver, the findings of a court of equity come to an appellate court clothed with a presumption of correctness, and the decision to appoint a receiver will be overturned only upon a showing of an abuse of discretion. Bird Road Commercial Sites, Inc. v. Feldstein, Fla.App. 1968, 214 So.2d 658, 660. In the case sub judice, *788 appellants have failed to demonstrate an abuse of discretion by the trial court in appointing a receiver for certain funds and records based upon an ex parte hearing without notice. Karafilakis v. Stavroulakis, 112 Fla. 303, 150 So. 277 (1933); Dixie Music Co., Inc. v. Pike, 135 Fla. 671, 185 So. 441, 446-447 (1938). See also: Decumbe v. Smith, 143 Fla. 5, 196 So. 595, 596 (1940); Lieberbaum v. Levine, Fla. 1951, 54 So.2d 159, 161.
Therefore, for the reasons stated and based upon the authorities cited, the order appealed is affirmed.
Affirmed.
CHARLES CARROLL, Judge (concurring specially).
I concur, on the merits of the appointment of the receiver, and, with some reservations, in the lack of notice.
The complaint which first was submitted to the federal court for appointment of the receiver without notice contained allegations of need for dispensing with notice which were sufficient in form to comply with the requirements therefor in the Florida Rules of Civil Procedure (Rule 1.620(a) applying to appointment of receivers the provisions for notice as to injunctions set out in Rule 1.610(b)). It was brought out that at the hearing held in the federal court, before noon on a certain day, which resulted in dismissal of the complaint there for want of jurisdiction, both sides were represented by counsel and that when the ruling of dismissal was made, counsel for plaintiff announced intention to refile the complaint and apply for relief in the state court, and that leave of the federal court was granted to withdraw the original complaint for that purpose. The complaint was refiled, in the circuit court that afternoon, with a cover page of explanation, and the plaintiff applied for and obtained the appointment of the receiver, without notice to defendants or their counsel. No new allegations of need for dispensing with notice were made. To so proceed for appointment of the receiver in the state court without giving notice to the opposing side, in those circumstances, bordered on sharp practice.
However, from the standpoint of the state circuit court to which the application thus was made, it should be recognized that the complaint which was presented contained allegations for dispensing with notice which on their face appeared sufficient under the cited rules. Therefore, it should be assumed, in absence of a showing on the record to the contrary, that the circuit court, upon making inquiry relating to the basis for such allegations, found sufficient cause for dispensing with notice in ordering the appointment of the receiver. For that reason I concur also in the affirmance of that feature of the order.
BARKDULL, C.J., agrees.
NOTES
[1] In our review of the order appealed, we have not considered or referred to matters which were not before the trial court, with one exception. That exception is that appellant has asserted that its action for arbitration was filed prior to suit instituted by the appellee, in which the order appealed was entered. Specifically, attached to the complaint were a number of exhibits, including the written joint venture agreement, the demand for arbitration by Arison, and the earlier notice to terminate written by Klosters.

Two termination provisions of the written joint venture agreement between the parties were set forth in paragraphs 10 and 12 as follows:
"10. Termination for Material Breach
10.1 This agreement may be terminated by either party for the material breach of the other upon the following conditions.
10.2 Neither party may terminate this agreement for the material breach of the other, unless the party intending to terminate shall have given the defaulting party thirty (30) days written notice specifying with particularly the condition, act, omission, or course of conduct asserted to constitute such material breach, and this agreement may not be terminated, if during such period the defaulting party has cured, corrected, or eliminated such material breach, or has taken steps within such thirty (30) day period to cure, correct, or eliminate such material breach, which steps if diligently prosecuted to a conclusion are reasonably designed to cure, correct or eliminate such material breach.
10.3 If KLOSTERS terminates this agreement for the material breach of ARISON, it shall have the same rights and remedies, and ARISON and TED ARISON shall be subject to the same restrictions, as are provided in paragraph 9.3 (termination by ARISON for reasons other than the material breach of KLOSTERS).
10.4 If ARISON terminates this agreement for the material breach of KLOSTERS, KLOSTERS covenants and agrees to pay to ARISON in U.S. dollars on the date of termination a sum to be calculated by adding the sum of $50,000.00 per ship per year in advance for each full year or part of a year remaining under the terms of this agreement, the payment in no event to exceed the total sum of $250,000.00 per ship.
10.4.1 KLOSTERS recognizes that ARISON will be required to incur obligations of office, staff, with travel agents, and in connection with other matters, and therefore, in the event of the material breach of KLOSTERS, KLOSTERS, in addition to the sums required to be paid pursuant to paragraph 10.4 agrees to hold and save ARISON harmless from any claims or expenses incurred as a direct result of KLOSTERS' material breach. It is specifically understood that the purpose of this provision is to make ARISON whole in connection with a loss occasioned by such material breach, and such payment hereunder will be accepted by ARISON in lieu of all other damages, claims and compensation of any kind except those sums provided in paragraph 10.4 and such sums as may have been earned prior to such material breach."
* * * * *
"12. Termination  Withdrawal of Ships.
12.1 If the average net overall profits per year during any period of two (2) years while this agreement is in force are less than $500,000. per ship, KLOSTERS have the right to withdraw any of the ships from the market or terminate the agreement upon thirty (30) days written notice without paying any penalty to ARISON.
12.2 The intention of this paragraph 12 is to create a formula by which KLOSTERS may withdraw the ships as a result of adverse economic conditions. Therefore, in the event cause or causes of the reduction of the average net overall profits per year below the average sum of $500,000. per ship, shall be the destruction, loss or damage occasioned by Act of God, act of war, public enemies, perils of the sea (not including weather conditions during the period), fire, collision and explosions or accidents due to or because of engines or machinery or appurtenances of the ships or any of them, the said average sum $500,000. per ship then shall be adjusted downward to take such cause or causes into account."
The arbitration clause was paragraph 16 of the joint venture agreement, as follows:
"16. Arbitration.
16.1 In the event any differences or disputes arise between us in matters relating to this agreement or emanating therefrom, the interpretation thereof, or the consequences of the breach thereof, such disputes shall be arbitrated. Each of us shall appoint an arbitrator. If these arbitrators are unable to agree they shall select a third arbitrator. The award of a majority of the arbitrators shall be made a rule of court. If the arbitrators selected by each party are unable to select a third arbitrator, the disputes and differences shall be arbitrated under the new rules of the London Arbitration Association or such other association which we may agree upon in writing, whose award shall be made a rule of court. KLOSTERS retains the right to insist on London Arbitration.
16.2 Nothing contained in this paragraph shall be construed to prevent any party hereto from applying to any court of competent jurisdiction for the purpose of obtaining such preliminary relief as may be appropriate to maintain the status quo pending the arbitration proceedings provided for herein. Status quo shall mean the last peaceable noncontested condition existing at the time of arbitration."